UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THERABIONIC, INC., ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| v. ] | CIVIL ACTION NO. |
| ] | 2:18-CV-01498-KOB |
| FREDERICO PEREGO COSTA, ] | |
| ] | |
| Defendant. ] | |

## MEMORANDUM OPINION

Despite his express consent to this forum and his consent to the court's jurisdiction over him in a contract, Defendant Dr. Frederico Perego Costa asks the court to dismiss this breach of contract case for *forum non conveniens* and lack of personal jurisdiction. He also contends that Plaintiff TheraBionic, Inc. has failed to state a claim upon which relief can be granted. (*See* Doc. 31).

Dr. Costa, a Brazilian oncologist, will no doubt suffer inconvenience from proceeding in this forum. But inconvenience alone does not support *forum non conveniens* and he bargained for the inconvenience. No private or public considerations outweigh Dr. Costa's and TheraBionic's choice of this forum or compel the court to find that the parties must litigate this case elsewhere. Also, no reason exists to release Dr. Costa from his contractual consent to this court's jurisdiction over him. And, rounding out Dr. Costa's theories for dismissal,

1

TheraBionic alleges a plausible breach of contract in this case. So the court will deny Dr. Costa's motion to dismiss.

I.  **STANDARD OF REVIEW**

Given the breadth of Dr. Costa's motion to dismiss, the court must analyze his motion under three different standards of review: (1) *forum non conveniens*; (2) Federal Rule of Civil Procedure 12(b)(2); and (3) Rule 12(b)(6).

A.  ***Forum non conveniens***

The doctrine of *forum non conveniens* grants a district court the discretion to dismiss a case, even when venue is proper, "when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). To obtain dismissal based on *forum non conveniens*, the moving party must demonstrate that "(1) an adequate alternative forum is available[;] (2) the public and private factors weigh in favor of dismissal[;] and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).

The court reviews a motion to dismiss for *forum non conveniens* under the same standard as a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). *Micor Indus., Inc. v. Mazak Corp*, 2018 WL 804303, at *4 (N.D. Ala. Feb. 9, 2018). So, the court accepts the facts alleged in the

complaint as true, "to the extent they are uncontroverted by defendants' affidavits." *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990). If the parties dispute the facts, the court must "give greater weight to the plaintiff's version of the jurisdictional facts" and "construe such facts in the light most favorable to the plaintiff." *Id.*

### B. Rule 12(b)(2)

A Rule 12(b)(2) motion attacks the court's jurisdiction over the defendant's person. The plaintiff initially bears the burden of making a prima facie showing in his complaint of the court's personal jurisdiction over the defendant. *S & Davis Intern., Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (quotation omitted). And the court accepts the facts alleged in the complaint as true. *Id.*

If the defendant challenges personal jurisdiction with affidavit evidence, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). And if the "plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.*

As the court discusses in detail below, because of a valid and reasonable forum selection clause, the court does not need to review the sufficiency of the

3

defendant's contacts with Alabama to determine the existence of personal jurisdiction.

### C. Rule 12(b)(6)

Under Rule 12(b)(6), a defendant can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The complaint will survive the motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

For a complaint to be "plausible on its face," it must contain enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the court accepts as true the factual allegations in the complaint. *Id.*

But not all allegations can defeat a motion to dismiss. "[L]abels and conclusions" and speculation "will not do." *Twombly*, 550 U.S. at 555. So, the court will look only at well-pled facts, and if those facts, accepted as true, state a plausible claim for relief, then the complaint will survive the motion to dismiss. *Iqbal*, 556 U.S. at 678.

## II. BACKGROUND

This case involves complex subject matter spanning several years and countries. But TheraBionic's many claims rest on a simple contention—that Dr.

Costa breached his contract and exploited TheraBionic's confidential information.

From 2001 to 2007, Drs. Boris Pasche and Alexandre Barbault developed devices that transmitted electromagnetic fields at specific frequencies to treat cancer patients. In 2007, Drs. Pasche and Barbault founded TheraBionic to commercialize their proprietary cancer treatment technology.

Dr. Costa played a pivotal role in developing TheraBionic's technology. Specifically, beginning in 2005, with Drs. Pasche and Barbault's consent, Dr. Costa tested their OncoBionic P1 device on his patients in Brazil with advanced hepatocellular carcinoma. The parties call Dr. Costa's research the "Phase II Study."

Dr. Costa conducted the Phase II Study in Brazil subject to a nondisclosure agreement executed in 2003. The NDA provided that "Dr. Costa agreed not to disclose any of Drs. Pasche and Barbault's Confidential Information and agreed that all documents and materials containing any Confidential Information shall remain the property of Drs. Pasche and Barbault." (Doc. 14 at ¶ 18). The parties renewed the NDA in 2007 "to ensure the continued confidentiality of [Drs. Pasche and Barbault's] inventions." (*Id.* at ¶ 21).

In 2012, Dr. Costa asked TheraBionic, which was then located in Birmingham, Alabama, if he could use the OncoBionic P1 devices that remained in Brazil from the Phase II Study for further research. TheraBionic agreed and

helped set up the devices for Dr. Costa in Brazil and instructed him on how to use the devices with TheraBionic's proprietary methods and procedures.

As a prerequisite to Dr. Costa's research beginning in 2012, the parties again executed an NDA. TheraBionic's claims in this case arise out of the 2012 NDA.

The 2012 NDA states that TheraBionic's confidential information provided to Dr. Costa and any information Dr. Costa generated out of TheraBionic's information or materials will remain TheraBionic's property. Specifically, Paragraph 6 of the NDA states:

> Unless otherwise specified in writing, all documents and materials containing any Confidential Information shall remain the property of [TheraBionic]. Similarly, all information concerned with diagnostic and treatment response features directly or indirectly generated by [Dr. Costa] with the aid of information or materials furnished to [Dr. Costa] by [TheraBionic] shall be regarded as being Confidential Information of [TheraBionic] shall [sic] remain or shall be regarded as being the property of [TheraBionic]. . . .

(Doc. 14-2 at ¶ 6).

Further, the 2012 NDA states that it "shall be governed by Alabama law." And it contains a forum selection clause that states, "[t]he parties agree to jurisdiction and venue in state and federal courts located in Birmingham, Alabama." (Doc. 14-2 at ¶ 9).

After conducting research subject to the 2012 NDA, on April 28, 2015, Dr. Costa filed a U.S. patent application (the "377 Application") titled "Hemodynamic parameter monitoring system for diagnosis of a health condition of a patient,"

6

naming himself as inventor. (Doc. 14 at ¶ 24). TheraBionic "paid for the preparation and filing of the 377 Application which was drafted with the input and collaboration of Dr. Pasche and Dr. Costa." (*Id.* at ¶ 25). And the 377 Application "was developed from information and data collected by Dr. Costa using the TheraBionic P1 device and TheraBionic's proprietary methods and procedures." (*Id.* at ¶ 26).

TheraBionic then applied to the European Union to sell the commercial version of its OncoBionic P1 device in Europe. The EU eventually approved the P1 device for cancer treatment in Europe.

TheraBionic also submitted a patent application to the World International Property Organization under the Patent Cooperation Treaty to patent the technology underlying Dr. Costa's 2015 U.S. patent application.

In December 2016, Dr. Costa abruptly demanded that TheraBionic cease using information generated from Dr. Costa's Phase II Study in its application to the EU and demanded that TheraBionic remove itself from the WIPO patent application. Dr. Costa notified the auditor responsible for the EU application that he was "the sole owner of the Phase II Study" and that "TheraBionic had no right to reference or rely on the Phase II Study in its European Regulatory Approval Application." (Doc. 14 at ¶ 32).

Then, in October 2017, TheraBionic began prosecuting the U.S. patent

7

application phase (the "312 Application") of its WIPO patent application. According to TheraBionic, "Dr. Costa has continued to interfere with TheraBionic's prosecution efforts and still demands that TheraBionic remove itself from the 312 Application." (Doc. 14 at ¶ 34). TheraBionic is still currently prosecuting the 312 Application.

In December 2017, Dr. Costa filed his own WIPO patent application (the "825 Application"). TheraBionic alleges that the 825 Application requires (1) the use of TheraBionic's P1 devices; (2) cancer-specific frequencies discovered by TheraBionic; and (3) "confidential and proprietary information of [TheraBionic] developed by Dr. Pasche and Barbault, representing valuable trade secrets of [TheraBionic]." (Doc. 14 at ¶ 38).

Dr. Costa then founded his own cancer treatment technology company in the U.S. called Autem. TheraBionic alleges that Autem exploits "the information [Dr. Costa] obtained and the technology that was developed during his relationship with TheraBionic." (Doc. 14 at ¶ 39). TheraBionic also alleges that Autem developed a "copycat device" of TheraBionic's technology and is currently seeking FDA approval of the device. (*Id.* at ¶¶ 40–41).

From these facts, TheraBionic alleges generally that Dr. Costa "continues to blatantly disregard his contractual obligations and exploit the confidential information [he] received under the 2012 NDA." (Doc. 14 at ¶ 43).

8

Specifically, TheraBionic brings seven counts in its amended complaint: (1) breach of contract—the 2012 NDA; (2) misappropriation of trade secrets—information generated by Dr. Costa with the aid of TheraBionic's information and materials that should be regarded as TheraBionic's property; (3) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*; (4) injunctive relief—requesting that the court order Dr. Costa to formally assign all interests in the 312 Application and the 377 Application to TheraBionic; (5) conversion—of TheraBionic's intellectual property; (6) replevin—demanding restoration of TheraBionic's sole intellectual property rights; and (7) specific performance under Ala. Code § 35-4-33—demanding that Dr. Costa assign the rights to the 825 Application to TheraBionic pursuant to the 2012 NDA.  (*See* Doc. 14 at 15–23).

Dr. Costa moves to dismiss the amended complaint on three grounds: (1) *forum non conveniens*, asserting that this case should be adjudicated in Brazil; (2) the court's lack of personal jurisdiction over Dr. Costa; and (3) TheraBionic's failure to state a claim upon which relief can be granted.  (*See* Doc. 31).

The court next addresses—and ultimately rejects—each of Dr. Costa's arguments for dismissal.  In doing so, the court finds that (1) the interests of convenience, fairness, and judicial economy do not warrant dismissal on *forum non conveniens* grounds; (2) the court has personal jurisdiction over Dr. Costa because of the 2012 NDA's forum selection clause; and (3) TheraBionic has stated claims

9

upon which relief can be granted.

## III. DISCUSSION

### A. *Forum non conveniens*

As the court mentioned above, a party who moves to dismiss a case on *forum non conveniens* grounds must demonstrate that "(1) an adequate alternative forum is available[;] (2) the public and private factors weigh in favor of dismissal[;] and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon*, 251 F.3d at 1311.

Here, for the following reasons, Dr. Costa has failed to establish the second requirement to invoke *forum non conveniens*. Neither public nor private factors weigh in favor of dismissal.

#### 1. Private Factors

Balancing the private interests of the parties requires "determining the convenience of the parties [and] affording domestic plaintiffs a strong presumption that their forum choice is sufficiently convenient . . . ." *Leon*, 251 F.3d at 1311 (quotation and citation omitted). Private interests for the court to consider include "'ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

The Eleventh Circuit considers access to evidence "[p]erhaps the most important 'private interest' of the litigants." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003). So, "[a] correct 'private interest' analysis begins with the elements of the plaintiff's causes of action. The court must then consider the necessary evidence required to prove and disprove each element. Lastly, the court should make a reasoned assessment as to the likely location of such proof." *Id.*

And a "strong presumption" exists "that the plaintiff has chosen a sufficiently convenient forum." *Leon*, 251 F.3d at 1314. So defendants raising *forum non conveniens* "are required to prove 'vexation' and 'oppressiveness' that are 'out of all proportion' to the plaintiff's convenience." *Id.* at 1314–15 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).

Here, the private interests do not weigh in favor of dismissal. By the express terms of the 2012 NDA, *both* parties selected this forum as the location to adjudicate any claims arising out of the 2012 NDA. (Doc. 14-2 at ¶ 9). The parties reached that agreement while TheraBionic was a resident of Alabama. (Doc. 14 at ¶ 22). And the parties agreed that Alabama law would govern the 2012 NDA. (Doc. 14-2 at ¶ 9). So, the court affords TheraBionic "a strong presumption that [its] forum choice is sufficiently convenient," *and* respects Dr. Costa's own choice of this forum. *See Leon*, 251 F.3d at 1311.

Dr. Costa "does not recall singing [the 2012 NDA] and did not find a signed

11

copy of it after reviewing all [his] electronic and hard copy records." (Doc. 31-1 at ¶ 2). But he does not deny that he signed it and does not dispute that a copy of the original document bears his signature. So, Dr. Costa's lapse in memory and failure to find his copy of the document aside, the court finds that Dr. Costa signed the 2012 NDA and expressly consented to this forum.

In addition, most of the evidence required to prove and disprove TheraBionic's claims will likely be located in the United States, not Brazil. Because of the choice of law provision in the contract, an interpretation of the 2012 NDA under Alabama law will govern TheraBionic's intellectual property rights. And, central to all of its claims, TheraBionic alleges that Dr. Costa misappropriated TheraBionic's confidential information *in the United States* with his competing U.S. company, pending U.S. patent applications, and efforts to secure FDA approval for an alleged "copycat device." In fact, TheraBionic does not allege any ongoing conduct with Dr. Costa in Brazil or that TheraBionic suffered any harm in Brazil. Further, the parties themselves possess the communications between them, the information and equipment TheraBionic provided to Dr. Costa, and any products that they generated from TheraBionic's equipment, so the parties will not need to conduct third-party discovery for these crucial materials.

On the other hand, some necessary evidence may also be located in Brazil.

TheraBionic contends that Dr. Costa generated some or all of the information that he is using in the United States from his research in Brazil. So the court anticipates that evidence and witnesses concerning what Dr. Costa developed in Brazil and how he developed it may be necessary and may be located in Brazil.

But Dr. Costa has not demonstrated that he cannot obtain discovery from Brazil without oppressive inconvenience while litigating in Alabama. Dr. Costa submitted an affidavit from Dr. Rafael Villar Gagliardi, an expert in Brazilian civil law, stating that "foreign litigants litigating abroad have the right to compel Brazilian authorities to hear the testimony of witnesses who live in Brazil." (Doc. 41-1 at 12). Dr. Gagliardi also states that obtaining discovery from abroad would require a U.S. court to request a hearing from the Brazilian Superior Court of Justice, "which would, in sequence, order a judge to proceed with the hearing," which "is typically slow and expensive" and "requires the engagement of Brazil counsel." (*Id.*) But, without more detail, Dr. Costa only establishes the unremarkable proposition that coordinating discovery with a foreign country is costly and inconvenient. He has not demonstrated, as his burden requires, "'vexation' and 'oppressiveness' that are 'out of all proportion' to [TheraBionic's] convenience." *Leon*, 251 F.3d at 1314–15 (quoting *Piper Aircraft*, 454 U.S. at 241).

Further, Dr. Costa has not demonstrated that any potential witnesses in

Brazil are unwilling to participate in this case. And TheraBionic alleges—and Dr. Costa admits—that some of Dr. Costa's colleagues in Brazil signed an NDA with TheraBionic containing the same forum selection clause as the 2012 NDA with Dr. Costa. Those witnesses could have foreseen engaging with this forum and thus may be more likely to cooperate with discovery efforts. (*See* Doc. 14 at ¶ 23; Doc. 31-1 at ¶ 30).

Dr. Costa's inconvenience in litigating away from his home country and the existence of some evidence in Brazil does not outweigh the more substantial private factors that do not favor dismissal. Both parties agreed to this forum while TheraBionic resided in Alabama; the interpretation and alleged breach of an Alabama contract are the critical issues in this case; each claim in this case relates to Dr. Costa's conduct in the United States; the most necessary evidence will likely be located in the United States or will be in the parties' possession; and TheraBionic alleges harm only in the United States. So the court finds that the private factors do not favor dismissal.

2. <u>Public Factors</u>

Though "the private factors are generally considered more important," the court must also weigh the competing public interests in this case. *Leon*, 251 F.3d at 1311 (quotation omitted). "Relevant public interest factors include the sovereigns' interests in deciding the dispute, the administrative burdens posed by

14

trial, and the need to apply foreign law." *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1284 (11th Cir. 2001) (quotation omitted). And when considering public interest factors, the court must consider the state's interest and the federal interest. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1104 (11th Cir. 2004).

Here, Alabama has an interest in enforcing contracts governed under its law and entered into by its residents. And the United States has a "strong federal interest in making sure that . . . United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." *SME Racks*, 382 F.3d at 1104 (quotation omitted). Further, TheraBionic alleges that Dr. Costa is exploiting its intellectual property and confidential information in seeking U.S. patent protection and FDA approval—the United States has an interest in these two legal processes.

Of course, Brazil also has a public interest in intellectual property that one of its citizens helped develop though research on Brazilian patients on Brazilian soil. But Dr. Costa does not persuade the court that Brazil has a stronger public interest than Alabama or the United States in enforcing an Alabama contract entered into by an Alabama citizen, pursuant to which both parties selected an Alabama forum, when all of the alleged breaching conduct occurred in the United States. So the court finds that public interest factors do not weigh in favor of dismissal.

Because Dr. Costa has not met his burden to show that the public and private factors weigh in favor of dismissal, the court will deny his motion to dismiss for *forum non conveniens*.

B. **Personal Jurisdiction**

Next, Dr. Costa moves to dismiss this case because he contends that this court lacks personal jurisdiction over him. For the following reasons, the court disagrees.

Typically, when a non-resident defendant moves the court to dismiss a case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the court would examine whether the defendant has "certain minimum contacts with [Alabama] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" under the Due Process Clause. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quotation omitted). But, as in this case, when the non-resident defendant "contractually agreed to personal jurisdiction in [the forum state], the usual due process analysis need not be done." *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 921 (11th Cir. 1989) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 473 n.14 (1985)).

But a forum selection clause does not automatically end the due process inquiry. The court will not honor a forum selection clause if it is "unreasonable or

unjust" or "if the chosen forum is seriously inconvenient for the trial of the action." *Proudfoot*, 877 F.2d at 921; *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 16 (1972). And to escape the forum selected in the contract on the grounds of inconvenience, the moving party must show that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Zapata*, 407 U.S. at 18.

In his motion to dismiss, Dr. Costa almost concedes the power of the forum selection clause. (*See* Doc. 31 at 16–17) ("In situations where the parties allegedly agree to jurisdiction, it is usually not necessary for the Court to perform [the minimum contacts] analysis"; "At the motion to dismiss stage of the proceedings, the [forum selection clause] would typically obviate the need for the court to perform a personal jurisdiction analysis."). But he urges the court to override his express consent to the court's personal jurisdiction based on "serious inconvenience" to him. (*Id.* at 17).

Dr. Costa contends that the private factors on which he relied for his *forum non conveniens* argument establish "serious inconvenience" sufficient to override the freely-negotiated and reasonable forum selection clause. (*See* Doc. 31 at 17–18). Again, these factors are that he lives and works in Brazil; that he allegedly used TheraBionic's information in research in Brazilian hospitals with Brazilian patients and colleagues; and that evidence and witnesses related to his research are

17

in Brazil. In addition, he adds that he has never lived in Alabama, has no assets in Alabama, and only visited Alabama once. (*Id.* at 17). These factors show that Dr. Costa will indeed suffer inconvenience by litigating in Alabama.

But Dr. Costa bears a much heavier burden to escape his contract. Where, as here, "it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." *Zapata*, 407 U.S. at 16. Dr. Costa has not shown inconvenience so difficult "that he will for all practical purposes be deprived of his day in court." *Id.* at 18. The inconveniences he identifies—opportunity costs, travel time and costs, and coordinating discovery with a foreign country—would likely exist in any litigation between foreign parties and were "clearly foreseeable at the time of contracting." *Id.* at 17–18. Dr. Costa freely negotiated these inconveniences in exchange for TheraBionic's confidential information, and he provides no compelling reasons for why the court should not hold him to his bargain.

The court will enforce the forum selection clause in the 2012 NDA in which Dr. Costa expressly consented to this court's exercise of personal jurisdiction over him. So the court will deny Dr. Costa's motion to dismiss for lack of personal jurisdiction.

### C. Rule 12(b)(6)

Finally, Dr. Costa moves to dismiss the amended complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The court will reject his final argument for dismissal.

Dr. Costa first argues that the amended complaint fails to state a plausible claim for relief because it relies on a 2003 NDA to which TheraBionic is not a party. (*See* Doc. 31 at 18–19). But the 2003 NDA is not at issue in this case. TheraBionic premises each of its claims on the 2012 NDA.

Next, Dr. Costa contends that TheraBionic has failed to plead the satisfaction of a condition precedent to the 2012 NDA. (*See* Doc. 31 at 19–20). According to Dr. Costa, under Paragraph 1 of the agreement, the 2012 NDA applies only to information "clearly designated, labelled, or marked in a conspicuous place as confidential," and TheraBionic has not alleged that it ever marked information as confidential. (Doc. 14-2 at ¶ 1).

But, under the 2012 NDA, confidential information is not exclusively information "designated, labelled, or marked in a conspicuous place as confidential." Rather, "*all information . . . generated* by [Dr. Costa] with the aid of information or materials furnished to [Dr. Costa] by [TheraBionic] *shall be regarded as being Confidential Information . . . .*" (Doc. 14-2 at ¶ 6). So TheraBionic did not have to allege that it labeled information as confidential to

19

state a plausible breach of the NDA based on the alleged exploitation of confidential information.

Finally, Dr. Costa contends that the NDA only protects information that TheraBionic "disclosed" and "designated" as confidential. (*See* Doc. 31 at 21–23). Because TheraBionic has not alleged that it disclosed information designated as confidential, Dr. Costa contends that TheraBionic has failed to state a plausible breach of the NDA.

But Dr. Costa again misinterprets the NDA. The NDA considers *any* information generated by Dr. Costa from TheraBionic's information provided to him for testing to be confidential information—it did not necessarily have to be information "disclosed" and "designated" as confidential. (*See* Doc. 14-2 at ¶¶ 1, 6). TheraBionic alleges that Dr. Costa used information it generated with TheraBionic's technology in his patent applications and thus plausibly states that Dr. Costa breached the NDA. So the court will deny Dr. Costa's Rule 12(b)(6) motion.

## IV. CONCLUSION

By separate order, the court will **DENY** Dr. Costa's motion to dismiss.

**DONE** and **ORDERED** this 16th day of April, 2019.

*/s/ Karon O. Bowdre*
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE